UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SANTHONY THIGPEN,

                                    Plaintiff,                    **Hon. Hugh B. Scott**


                                                                 11CV466A

                v.                                               **Report
                                                                 &
                                                                 Recommendation**


        COUNTY OF ERIE, et al.,

                                    Defendants.

_____

        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 11).  The instant matter before the Court is defendants' motion summary judgment

(Docket No. 34[1]).  The moving defendants include the County of Erie; Sheriff Timothy Howard;

Robert Koch, the then-superintendent of the Erie County Holding Center (see Docket No. 34,

Joselyn Decl. ¶ 4); Sergeant Robert Dee; Deputy Joseph Ganci; Deputy Christopher Hall; Deputy

Joseph Scherer; Deputy Joseph Oroszi (Docket No. 34, Defs. Notice of Motion; Defs.

Statement).

_____

        [1]In support of their motion, defendants submit their Rule 56 Statement, with exhibits,
Docket Nos. 34, 36 (Exhibit C, a CD filed under seal); their Memorandum of Law; the
Declaration of Chief Scott Joselyn, chief of the Professional Standards Division of the Erie
County Sheriff's Department, Docket No. 34.
        In opposition, plaintiff submits, his Counterstatement ("Pl. Counterstatement"), Docket
No. 39; his attorney's Declaration with exhibits, Docket No. 40; his own Declaration, Docket
No. 41; and his Memorandum of Law, Docket No. 42.

Responses to this motion initially were due by February 15, 2013 (Docket No. 35), but plaintiff requested (Docket No. 37) an extension, which was granted (Docket No. 38). Responses then were due by March 1, 2013, with any replies due by March 22, 2013, and the motion was deemed submitted (without oral argument) on March 22, 2013 (id.).

## BACKGROUND

This is a civil rights action commenced by a plaintiff for his treatment while in the custody of the Erie County Sheriff (see generally Docket No. 1, Compl.). Plaintiff alleges excessive force was applied to him in violation of his civil rights; he also alleges common law negligence, common law negligent training, and common law assault and battery (id.). Plaintiff seeks punitive damages from some of the defendants, some of which, such as Sergeant Dee and the individual deputies, were named in their individual capacities (id. ¶¶ 62, 10-11).

Plaintiff alleges that, on March 6, 2010, as a detainee he suffered "a severe beating at the hands of Defendant Sergeant Robert Dee and various Erie County Deputy Sheriffs, Defendants Joseph Ganci, Christopher Hall, Joseph Scherer, Joseph Oroszi, and One or More John Does" (id. ¶¶ 1, 12-28). The beating violated plaintiff's rights under the Eighth and Fourteenth Amendments and the laws of New York State to be free from the use of excessive force (id. ¶ 1). Defendant Erie County allegedly violated plaintiff's rights through deliberate indifference to violence inflicted upon plaintiff through a County custom or practice of overlooking, ignoring, or disregarding acts of violence against inmates (id.). The County, Sheriff Howard, and Superintendent Koch also allegedly violated plaintiff's rights through their failure to train, supervise, direct or control deputies in the performance of their duties (id.).

Defendants jointly answered on August 24, 2011 (Docket No. 9). Those defendants who have yet to appear are the John Doe defendants named by plaintiff.

*Defendants' Summary Judgment Motion*

According to defendants' Rule 56 Statement (Docket No. 34, Defs. Statement), as plaintiff responds to it (cf. Docket No. 39, Pl. Counterstatement), plaintiff was incarcerated in 2010 after his arrest for theft of services and other offenses (Docket No. 34, Defs. Statement ¶ 4, Ex. A, Pl. 50-h Tr. at 21). Plaintiff contends that the Booking Summary Report (id. Ex. B) does not relate to the referenced detention; rather, defendants' March 10, 2010, report does (Docket No. 39, Pl. Counterstatement ¶ 4; Docket No. 40, Pl. Atty. Decl. ¶ 30, Ex. K). On March 6, 2010, plaintiff was escorted into the visitation room to see his fiancé (Docket No. 34, Defs. Statement ¶¶ 6, 7). The rules for visitations were posted on the wall of the visitation area (id. ¶¶ 8, 32), although plaintiff denies that he was orally advised of these rules (Docket No. 39, Pl. Counterstatement ¶ 32). Prior to his visit, plaintiff talked with another inmate, a violation of facility visitation rules and he had his visit canceled as a result (Docket No. 34, Defs. Statement ¶¶ 9-10, 33). Plaintiff left the visitation booth and upset a table containing gloves. Then two deputies, including Ganci, approached plaintiff. (Id. ¶¶ 11-13.) Plaintiff later testified that he ran to the nearest sally port and threw himself on the floor (id. ¶¶ 14, 15), with plaintiff later claiming that he was trying to protect himself from an anticipated assault (cf. Docket No. 39, Pl. Counterstatement ¶ 14; Docket No. 34, Defs. Statement, Ex. A, Pl. 50-h Tr. at 35-36). Plaintiff alleges that one of the deputies then dropped his knee onto plaintiff's face and guards were hitting him while curled in a prone position (see Docket No. 34, Defs. Statement ¶ 16). He claims that a "room full of guards" (id., Ex. A, Pl. 50-h Tr. at 36) then came and attacked him

(id. ¶¶ 17-18). He testified that his underwear was ripped off of him, wedged into his butt, and that his tooth was chipped (id. ¶ 19); he also claimed in subsequent reports that he soiled himself (id. Exs. J, L; see id. ¶ 28). Plaintiff then was pulled up from the floor and hand cuffed with his arms behind him (id. ¶ 20; see Docket No. 36, Ex. C); plaintiff denies this, rather he claims that defendants pulled him up from the floor after he was cuffed (Docket No. 39, Pl. Counterstatement ¶ 20; Docket No. 34, Defs. Statement, Ex. A, Pl. 50-h Tr. at 37). Plaintiff alleges injuries from this incident of a chipped tooth, a sore back, and bruises on his face and wrists (Docket No. 34, Defs. Statement ¶ 27); plaintiff argues that this is an incomplete listing of his injuries, that he also suffered pain and bruising to his shins (Docket No. 39, Pl. Counterstatement ¶ 27; Docket No. 34, Defs. Statement, Ex. A, Pl. 50-h Tr. at 71).

Exhibit C (filed under seal, see Docket No. 34, Def. Statement ¶ 5) was viewed in camera by this Court. It consists of five video recordings of deputies entering a room, extracting an inmate (apparently the plaintiff), and transporting that inmate from that room, into an elevator, to an infirmary waiting area, to the infirmary, and then to the entrance for a segregation unit (Docket No. 36, Ex. C). Defendants assert that these videos show that plaintiff was not pushed into a wall of the elevator, had his foot stepped upon, or thrown on a medical table (Docket No. 34, Defs. Statement ¶¶ 21-24), all of which plaintiff claims occurred (cf. id.). Plaintiff contends that the footage does not show (for example) the elevator wall or plaintiff's head or foot and he contends that the footage showed that he was pushed into the wall and his foot was stomped upon (Docket No. 39, Pl. Counterstatement ¶¶ 22-24). He contends that frames 1420 through 1435 of the video (see Docket No. 36, Ex. C) indicate that defendants lifted plaintiff, pulling him backwards, and causing him to land with some force on the medical table, hence

concludes that he was "thrown" (Docket No. 39, Pl. Counterstatement ¶ 24). Plaintiff alleges that he bled from this incident (Docket No. 34, Defs. Statement ¶ 25), but there is no indication of any bleeding occurring in plaintiff's medical records from that incident (id. ¶¶ 26, 66, Ex. H; Docket No. 36, Ex. C). Plaintiff, however, contends that he stated that he had blood on him and did not know its source, and that defendants' records showed that he was bleeding (Docket No. 39, Pl. Counterstatement ¶¶ 25, 26; Docket No. 34, Defs. Statement, Ex. B, at 2). Exhibit B is plaintiff's booking form for February 12, 2010, while Exhibit D, at page 2 is the Incident Report for the March 6, 2010, incident at issue. During his medical evaluation, only a scratch on his right forearm was attributed to the incident (Docket No. 34, Defs. Statement ¶ 64); plaintiff disputes the completeness of this medical record (Docket No. 39, Pl. Counterstatement ¶ 64). Based upon a March 10, 2010, evaluation by nurse Kathleen Davidson, plaintiff did not have any marks or swelling on his legs, arms, face, torso, or back subsequent to the incident, and that plaintiff had a good range of motion in both wrists (Docket No. 34, Defs. Statement ¶ 65); plaintiff contends that his only injury to his face was to his tooth, which was noted in his record (Docket No. 39, Pl. Counterstatement ¶ 65; Docket No. 34, Defs. Statement, Ex. M, at 3 (in Superintendent Koch's investigative report, Koch notes that plaintiff referred to a dentist for a chipped tooth)). There was no indication from this subsequent medical evaluation that plaintiff's underwear was torn off, that he defecated on himself, had lost consciousness, or chipped his tooth (Docket No. 34, Defs. Statement ¶ 67); plaintiff again disputes these facts since there is no indication that the nurse here investigated his underwear or teeth and (as previously mentioned) plaintiff's tooth was chipped and that fact was noted in his record (Docket No. 39, Pl. Counterstatement ¶ 67; Docket No. 41, Pl. Decl. ¶ 13).

Deputy Ganci was assigned to the visitation area on March 6, 2010, with Deputy Scherer (Docket No. 34, Defs. Statement ¶ 31). Scherer informed plaintiff that he could not talk with another inmate in the visitation area, to which plaintiff loudly responded "F__ you or something to that effect" (id. ¶¶ 34-35, Ex. F, Scherer EBT Tr. at 90); plaintiff counters that Scherer did not speak with plaintiff when he arrived in the visitation area (Docket No. 39, Pl. Counterstatement ¶ 34; Docket No. 41, Pl. Decl. ¶ 5) and, as previously noted, plaintiff was not given a verbal warning before his visit was canceled (Docket No. 39, Pl. Counterstatement ¶ 35). Scherer commanded plaintiff to return to his cell and plaintiff said "this is bullshit, I'm not going anywhere" to Scherer (Docket No. 34, Defs. Statement ¶ 37); plaintiff denies making that statement (Docket No. 39, Pl. Counterstatement ¶ 37). As plaintiff walked back to the visiting waiting room, he passed by Ganci at Ganci's desk in the visiting room. Plaintiff mumbled "I'll kick your ass" as he walked by Ganci. (Docket No. 34, Defs. Statement ¶ 38.) Plaintiff, however, only admits to passing by Ganci at that desk and that any statements plaintiff may have made (a) were not directed to Ganci and (b) were not perceived to be a threat by Ganci or the other deputies (Docket No. 39, Pl. Counterstatement ¶ 38). Ganci stood up and followed plaintiff out of the room, with plaintiff mumbling to himself and breathing heavily (Docket No. 34, Defs. Statement ¶ 39). Plaintiff then picked up the box of gloves (used for strip searches) and threw it on the wall (id. ¶ 40); plaintiff contends rather that he only caused the gloves to fall to the ground or "irately slapped" the box of gloves to the ground (Docket No. 39, Pl. Counterstatement ¶¶ 40, 39).

Defendants contend that plaintiff then slowed down, spun around, and punched Ganci in the right eye with a closed fist (Docket No. 34, Defs. Statement ¶ 41); plaintiff denies this,

arguing that Scherer initially filed a false report that plaintiff struck Ganci and Scherer later

testified that he did not see plaintiff punch Ganci (Docket No. 39, Pl. Counterstatement ¶¶ 41-43;

Docket No. 34, Defs. Statement, Ex. F, Scherer EBT Tr. at 126, 153, Ex. E, Ganci EBT Tr. at

108-09, Ex. D, Incident Report, at 5 (Scherer's Report to Sergeant Dee, Mar. 6, 2010, claiming

that plaintiff struck Ganci). Plaintiff claims that he walked a few steps then went to the ground

in a submissive posture (Docket No. 41, Pl. Decl. ¶¶ 6-7). Ganci told Scherer (who was walking

behind him) to notify staff that a dangerous situation was arising (Docket No. 34, Defs.

Statement ¶¶ 43-45); plaintiff argues that Scherer pulled his pin because he saw plaintiff and

Ganci grappling and not because of what he heard (or did not hear) from Ganci (Docket No. 39,

Pl. Counterstatement ¶¶ 43, 44; Docket No. 34, Ex. F, Scherer Dep. Tr. at 62-66[2]). Central

control heard Scherer's message and alerted staff of the incident and its location, mobilizing

other deputies (Docket No. 34, Defs. Statement ¶¶ 45-46). Ganci, meanwhile, turned back to

plaintiff, who faced him in a fighting posture (id. ¶ 47); plaintiff, however, contends that he was

face down on the ground at this point (Docket No. 39, Pl. Counterstatement ¶ 47). Ganci put

plaintiff in a defensive hold, twisting plaintiff down and plaintiff fell forward, palms down, with

Ganci's weight on top of him while his right hand was on plaintiff's back (Docket No. 34, Defs.

Statement ¶¶ 48-49); plaintiff denies this, claiming that he brought himself down to the ground

on his own (Docket No. 39, Pl. Counterstatement ¶¶ 48-50). Scherer restrained plaintiff by

holding plaintiff by the ankles (Docket No. 34, Defs. Statement ¶ 50); plaintiff also denies this

(Docket No. 39, Pl. Counterstatement ¶ 50).

---

[2]According to Scherer's testimony, a body alarm carried on deputies' belts would be
activated by pulling a pin or pushing a button to relay a distress code "10-99".

Deputy Hall first responded to the emergency 10-99 call and saw Ganci on his knees trying to control plaintiff, who was on his stomach and kicking (Docket No. 34, Defs. Statement ¶¶ 51, 45-46). Hall moved to plaintiff's left side and tried to control his left arm and eventually cuffed him (id. ¶¶ 52-53), plaintiff claims that Hall used force on plaintiff (Docket No. 39, Pl. Counterstatement ¶ 52); as a result, Hall's middle, ring, and index fingers were lacerated (Docket No. 34, Defs. Statement ¶ 54). Hall, with other deputies, gained control of plaintiff's right arm and cuffed his right wrist (id. ¶ 55). Plaintiff continued to struggle, kicking and squirming (id. ¶ 56), but plaintiff denies this, arguing that he was cowering to avoid being beaten (Docket No. 39, Pl. Counterstatement ¶ 56). He bled from his arm from an opened cut (Docket No. 34, Defs. Statement ¶ 57).

Deputy Oroszi also responded to the 10-99 call and held bring plaintiff from the visitation waiting room to the medical clinic (Docket No. 34, Defs. Statement ¶ 58; Docket No. 36, Ex. C, frames 80-94). Plaintiff was brought to the seated position and then to his feet and brought to the medical unit waiting room (Docket No. 34, Defs. Statement ¶ 59). While in the medical unit waiting room, plaintiff was made to kneel on a metal bench, facing a wall (id. ¶ 60). He was brought into the medical unit, after injured deputies Ganci and Hall were taken to the Erie County Medical Center (id. ¶ 61). Defendants conclude that the video evidence of the escort from the visitation waiting room to the medical unit (and to the segregated housing unit) did not show any excessive force being used against plaintiff (id. ¶ 62; see Docket No. 36, Ex. C); plaintiff denies this, concluding that the videotape is consistent with his version of events (Docket No. 39, Pl. Counterstatement ¶ 62).

Plaintiff plead guilty to disorderly conduct and not guilty to other charges in the disciplinary proceeding following this incident (Docket No. 34, Ex. L; Defs. Statement ¶¶ 79-83). Plaintiff, however, objects to the relevance of this (Docket No. 39, Pl. Counterstatement ¶¶ 79, 82). He was indicted for assault in the second degree against Deputy Ganci and pled guilty to an Information charging third degree assault (Docket No. 34, Defs. Statement ¶¶ 74-78, Exs. J, K). Plaintiff concedes that he entered this plea, but argues that Ganci struck the first blow and plaintiff denies that he punched Ganci before Ganci punched him (Docket No. 41, Pl. Decl. ¶¶ 11-12).

Chief Joselyn of the Sheriff's Department's Professional Standards Division reviewed a report of this incident from then-Superintendent Koch (Docket No. 34, Ex. M, Defs. Statement ¶¶ 84-89) and interviewed some of the deputy defendants and concluded in his investigation that plaintiff made a false report. Chief Joselyn found that there was "absolutely no evidence that [plaintiff] was beaten, that he had a seizure and that he had defecated on himself." (Docket No. 34, Joselyn Decl. ¶¶ 4-5, 7, 8.) An Initial Incident Reportable Incident Report was faxed to the New York State Commission on Correction but Joselyn reports that the Commission on Correction took no action on the matter and did not advise the Sheriff's Department that the use of force here was improper (id. ¶¶ 9-10). Plaintiff denies the characterization of this as a serious "investigation" (Docket No. 39, Pl. Counterstatement ¶ 84).

Defendants argue, first, that plaintiff's excessive force claims fail to meet either the subjective or objective requirements under Hudson v. McMillan, 503 U.S. 1, 7 (1992) (Docket No. 34, Defs. Memo. at 4-6). They contend that there is no issue of fact that defendants possessed a wanton state of mind in using force against plaintiff (id. at 4-5) and the force used

against plaintiff was <u>de minimis</u> as demonstrated by plaintiff's medical records following the incident (<u>id.</u> at 7-10).

Defendants deny that punitive damages are recoverable against a municipality (<u>id.</u> at 10).

They next argue that, if plaintiff's excessive force claims are dismissed, then there is no liability for the Sheriff or Superintendent for failing to train the defendant deputies (<u>id.</u> at 10-11). Defendants also claim that their actions in subduing plaintiff were discretionary decisions protected by qualified immunity (<u>id.</u> at 11-12).

*Plaintiff's Response*

Plaintiff argues in response that defendants are liable for using excessive force against him in March 6, 2010 (Docket No. 42, Pl. Memo. at 3-12). Under Rule 56, this Court has to resolve contested issues in the non-moving plaintiff's favor, hence he concludes that the issue is whether an assault on a person already flat on the floor constitutes a violation of the Eighth Amendment (<u>id.</u> at 3). Plaintiff argues that he suffered three uses of force, first after he knocked the box of gloves to the ground in the visitation area; then stomping plaintiff's bare feet and smashing his face into the elevator wall; then, throwing plaintiff face first into a brick wall, made to then kneel on a metal bench while deputies pressed down on his back in the waiting area outside of the holding center infirmary (<u>id.</u> at 4-5; Docket No. 41, Pl. Decl. ¶ 12). He contends that the videotape (Docket No. 36, Ex. C) is consistent with his version of what occurred, while noting gaps within the tape and discarded excerpts from the tape (Docket No. 42, Pl. Memo. at 3 n.1).

In discovery, plaintiff sought logs and other records of people in the visiting area on the day in question (Docket No. 40, Pl. Atty. Decl. ¶¶ 4, 9). Plaintiff initially believed that there

were video recording of the visitation area and sought production of those recordings in a state Freedom of Information Law proceeding but no recordings appeared to exist from that area and were not produced (id. ¶ 10). Since this evidence was not preserved, plaintiff seeks an adverse inference of what those records would have contained (Docket No. 42, Pl. Memo. at 12). Plaintiff himself identified one potential independent witness, another inmate in the visiting area when the incident occurred and defendants know of other witnesses of the scene but failed to provide that information to plaintiff or seek statements from them (Docket No. 41, Pl. Decl. ¶¶ 3-4). Alternatively, he seeks to obtain further discovery from potential witnesses under Rule 56(d) and deny summary judgment at this time (Docket No. 42, Pl. Memo. at 17-18).

Plaintiff next argues that punitive damages are available against the individual defendants, sued in their individual capacities (id. at 15).

He contends that the municipal and supervisory defendants are not entitled to summary judgment (id. at 16-17).

As for defendants' assertion of qualified immunity, plaintiff counters that it is based upon credibility assessment and acceptance of the defense version of events (id. at 3 n.2).

## DISCUSSION

I.      Applicable Standards

   A.      Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec.

2010).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).  The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2) (effective Jan. 1, 2011).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is

contended that there exists a genuine issue to be tried, id. R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id. Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

B.    Substantive Allegations

1.    Use of Force

a.    Use of Force Standards for Incarcerated or Arrested Persons

Generally, to state a claim under 42 U.S.C. § 1983, the plaintiff needs to show that he or she was denied a constitutional right and that deprivation occurred under the color of state law, e.g., Chambliss v. Rosini, 808 F. Supp. 2d 658, 666 (S.D.N.Y. 2011) (Gorenstein, Mag. J.). In Hudson v. McMillian, 503 U.S. 1, 4 (1992), the Court held that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury," see also Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 1176 (2010) (per curiam). The nature of the force rather than the extent of injury decides excessive force claims, Wilkins, supra, 130 S.Ct. at 1177. The use of force in Wilkins involves a prison inmate, id. (see Docket No. 42, Pl. Memo. at 6). For an excessive force claim under the **Eighth Amendment**, an inmate plaintiff has to establish both a subjective element and an objective element, under Hudson, supra, 503 U.S. at 7-8. Under this subjective test, the "core judicial inquiry is set out in [Whitley v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm," id. at 7, and the objective test requires the plaintiff to show that defendants "'had a wanton state

13

of mind when engaging in the alleged misconduct'" with the inquiry as to wantonness turning on

"'whether the alleged conduct involved unnecessary and wanton infliction of pain," <u>Jones v. Goord</u>, No. 05CV182, 2008 WL 904895, at *3 (W.D.N.Y. Jan. 23, 2008) (McCarthy, Mag. J.) (Report & Recommendation, citations omitted), <u>adopted</u>, 2008 WL 904895, at *1 (Arcara, Ch.J.) (W.D.N.Y. Mar. 31, 2008) (Docket No. 34, Defs. Memo. at 4).

One preliminary issue is whether the Eighth Amendment provides the appropriate standard for an excessive force claim as alleged by plaintiff (<u>cf.</u> Docket No. 42, Pl. Memo. at 3-12; Docket No. 1, Compl. ¶ 1 (beating violated plaintiff's rights under Eighth and Fourteenth Amendments)) and as contested by defendants (<u>cf.</u> Docket No. 34, Defs. Memo. at 4-10). Plaintiff was a pretrial detainee in the Erie County Holding Center (Docket No. 1, Compl. ¶ 13; Docket No. 34, Defs. Statement ¶ 4; Docket No. 34, Ex. A, Pl. 50-h Tr. at 21-22).

Use of force during an arrest is governed by the <u>Fourth</u> Amendment, <u>Graham v. Conner</u>, 490 U.S. 386, 388 (1989); <u>LaGrange v. Ryan</u>, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001) (excessive force during arrest). Use of force following conviction is governed by the Cruel and Unusual Punishment Clause of the Eighth Amendment, <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976) (citations omitted); <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994), <u>cert. denied</u> <u>sub nom.</u> <u>Foote v. Hathaway</u>, 513 U.S. 1154 (1995). Since plaintiff was not convicted of an offense when he allegedly was beaten, he was not being punished and thus his claim is not governed by the Eighth Amendment's ban against cruel and unusual <u>punishment</u>. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-37 (1979) (conditions of confinement); <u>City of Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239, 244 (1983); <u>Weyant v. Okst</u>, 101 F.3d 845, 856 (2d Cir. 1996) (medical treatment).

After Graham, supra, 490 U.S. at 393-94, excessive force claims must be examined based upon "the standard applicable to the specific constitutional right allegedly violated," Rodriguez v. Phillips, 66 F.3d 470, 477 (2d Cir. 1995) (noting rejection of "shocks the conscience" standard of Johnson v. Glick, 481 F.2d 1028, 1032-33 (2d Cir.), cert. denied, 414 U.S. 1033 (1973), generally for excessive force claims). Such claims may arise in three circumstances during the course of a defendant's detention and confinement based upon the status of that defendant when the force was applied--during the arrest, during pretrial detention, and during incarceration following conviction.

b.      Standard for Pretrial Detention Use of Force Claims

Between arrest and incarceration following conviction in the criminal process is detention while awaiting trial. The United States Court of Appeals for the Second Circuit held in 1995 that liability for excessive force while detained before trial emanates from substantive due process under the Fourteenth Amendment Due Process Clause, Rodriguez, supra, 66 F.3d at 476. In Rodriguez, plaintiff alleged that she was thrown by an officer against a door during a prison visit. The Magistrate Judge concluded that, "as Ms. Rodriguez was neither an arrestee nor an inmate, the allegation of excessive force implicated neither the Fourth nor Eighth Amendments. But, the report concluded, plaintiff's allegation did implicate the right to substantive due process under the Fourteenth Amendment," id. The District Court agreed with these findings and "concluded, while neither the Supreme Court nor this Court had ruled on whether a substantive due process right to be free from excessive force survived, Graham, supra, 490 U.S. 386, it believed such a claim was actionable," and (for qualified immunity purposes) was clearly established when the defendant in that case acted, Rodriguez, supra, 66 F.3d at 476. The United States Court of

Appeals for the Second Circuit recognized "the difficulty in this excessive force case arises from the fact that--as the district court correctly held--it falls outside the seizure and confinement contexts protected by the Fourth and Eighth Amendments," id. The case then turned on whether defendants enjoyed qualified immunity given this uncertainty of the legal standard, id.[3] Nevertheless, the Second Circuit held that "in the non-seizure, non-prisoner context, the substantive due process right to be free from excessive force is alive and well," and the Fourteenth Amendment Due Process Clause provides the standard for such claims, id. at 477; see Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998) (noting the Rodriguez holding).

Courts in this Circuit since 1995 have accepted the substantive aspect of the Fourteenth Amendment Due Process Clause as the constitutional basis for an excessive force claim for a jail detainee, see Barratt v. Joie, No. 06 Civ. 0324, 2002 U.S. Dist. LEXIS 3453, at *26-29 (S.D.N.Y. Mar. 4, 2002) (excessive use of force against plaintiff in police custody is governed by Fourteenth Amendment); see also Johnston v. Maha, 606 F.3d 39, 41 (2d Cir. 2010) (adopting pro se plaintiff's claim of Fifth Amendment violation for excessive force). "Factors to be considered in excessive force claims 'in determining whether the constitutional line has been crossed' include 'the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very

---

[3]In deciding the qualified immunity issue directly before that court, the Second Circuit found that "while the right of an individual not to be subjected to excessive force in any context is 'clearly established' in the conventional sense, the inquiry cannot be framed in such general terms," Rodriguez, supra, 66 F.3d at 476 (citation omitted). Absent a clearly established constitutional standard for excessive force applied to a non-arrestee/non-prisoner, the Second Circuit held that the right to be free from excessive force in that situation was not clearly established at the time of defendant's action to deny him qualified immunity, id. at 477.

purpose of causing harm,'" Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 251-52 (2d

Cir. 2001) (applying excessive force in non-seizure, nonprisoner context to force used by teacher

upon student, citing Rodriguez, supra, 66 F.3d at 476, as applicable standard) (quoting Metzger

v. Osbeck, 841 F.2d 518, 520 (3d Cir. 1988)).  Force is maliciously or sadistically employed "for

the very purpose of causing harm in the absence of any legitimate government object and it

results in substantial emotional suffering or physical injury then the conduct is presumptively

unconstitutional," Johnson, supra, 239 F.3d at 252; see Iamartino v. City of Bridgeport,

No. 3:10cv824 (MRK), 2012 U.S. Dist. LEXIS 89517, at *12 (D. Conn. June 28, 2012).  This

standard is similar to the subjective test for excessive force under the Eighth Amendment.  Some

courts have considered the pretrial detainee use of force standards under the Fourteenth

Amendment to be the same standard as the Eighth Amendment, Chambliss, supra, 808 F. Supp.

2d at 667-68.

        2.      Punitive Damages

Punitive damages are not recoverable against a municipality or municipal employees sued

in their official capacities, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Dill

v. Village of Gowanda, 952 F. Supp. 989, 997 (W.D.N.Y. 1997) (Heckman, Mag. J.) (Report &

Recommendation), adopted, 952 F. Supp. 989 (W.D.N.Y. 1997) (Skretny, J.).  Punitive damages

may be awarded against individuals (or those sued in their individual capacity) in a § 1983 action

"when the defendant's conduct is shown to be motivated by evil motive or intent, or when it

involves reckless or callous indifference to the federally protected rights of others," Smith v.

Wade, 461 U.S. 30, 56 (1983).  To prevail, a plaintiff needs to show a "positive element of

conscious wrongdoing," Kolstad v American Dental Ass'n, 527 U.S. 526, 538 (1999); New

Windsor Vol. Ambulance Corps., Inc. v. Meyers, 442 F.3d 101, 121 (2d Cir. 2006).

### 3. Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the

Court to resolve is whether the facts, taken in the light most favorable to the party asserting the

injury, show the official's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S.

194, 201 (2001). As was required by the Saucier Court, this Court first considers the

constitutional question, then considers the qualified immunity question, id. But the Supreme

Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), overruled Saucier in requiring courts to

first determine whether a constitutional violation occurred before considering whether defendants

enjoy qualified immunity. Instead, district courts determine in each case whether to consider first

the question of immunity or whether a constitutional violation had occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by

qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317,

1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982). "If it was objectively reasonable for the defendant to believe that his

act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled

to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of

Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

II.    Application

A.    Excessive Force

Defendants first argue that plaintiff fails to meet the subjective or objective elements for his excessive force claim (Docket No. 34, Defs. Memo. at 4-10), but apply the standard for an Eighth Amendment cruel and unusual punishment claim.  The applicable standard, however, is substantive due process under the Fourteenth Amendment for the non-seizure, non-prisoner context presented here.

Here, under that Fourteenth Amendment substantive due process standard, the use of force against plaintiff, the amount of force, and the extent of injury here was de minimis and plaintiff fails to state the objective portion of his excessive force claim, see Chambliss, supra, 808 F. Supp. 2d at 668, 661, 663 (granting defendants summary judgment where plaintiff fails to establish sufficient injury from alleged excessive force in pulling plaintiff's waist chain during transport to a court appearance).

Plaintiff argues that three instances of force caused physical injury to him (Docket No. 42, Pl. Memo. at 3-12).  Plaintiff also complains that he needs discovery of the names of other witnesses of the incident (Docket No. 40, Pl. Atty. Decl. ¶¶ 5-25; Docket No. 41, Pl. Decl. ¶ 9).  In addition, plaintiff identified one potential witness (Docket No. 41, Pl. Decl. ¶ 3) but did not produce an affidavit from him.  Instead, he places the onus on defendants to identify these other witnesses in the visitation room when the incident occurred.  But the issue is whether plaintiff suffered a sufficiently serious injury to show the extent of injury regarding the force applied or to establish requisite malice to state a substantive due process claim, Johnson, supra, 239 F.3d at 252.

Accepting plaintiff's version of his injuries, he suffered an abrasion, chipped tooth, and bruises. Plaintiff then sought minimal medical attention for these injuries, later being referred to a follow-up examination by prison officials' insistence to investigate plaintiff's use of force claims. Plaintiff did not suffer substantial physical injury to state an excessive force claim under the Due Process Clause. There is no indication that defendants had prior incidents with plaintiff to suggest malice in dealing with plaintiff on March 6, 2010.

Therefore, defendants' motion for summary judgment (Docket No. 34) should be **granted**.

For a complete record, this Court next considers the remaining arguments of the parties.

B.      Punitive Damages

Although defendants argue that there is no punitive damages against a municipality or municipal employees in their official capacities (see Docket No. 34, Defs. Memo. at 10), plaintiff sued Sergeant Dee and the individual deputies in their individual capacities (Docket No. 1, Compl. ¶¶ 10-11, 68; see Docket No. 42, Pl. Memo. at 15-16). As individuals, defendants may be held liable in punitive damage for actions "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others," Smith v. Wade, supra, 461 U.S. at 56, and show a "positive element of conscious wrongdoing," Kolstad, supra, 527 U.S. at 538; New Windsor Vol. Ambulance Corps., supra, 442 F.3d at 121.

Plaintiff here, however, has not shown the malicious intent requisite for imposing punitive damages, assuming plaintiff showed a violation of his rights. Under Johnson, supra, 239 F.3d at 252, the quantum of injury suffered also shows maliciousness. Where the injury does not result in "substantial emotional suffering or physical injury," id., there is no malicious use of

force for the substantive claim much less for punitive damages under an excessive use of force claim.

C.      Qualified Immunity

As of the Second Circuit's 1995 decision in Rodriguez, it is clearly established that the substantive Due Process Clause precludes the use of excessive force against jail detainees. Defendants thus would be precluded qualified immunity based upon this established standard. But this Court determined above that plaintiff failed to establish a violation of his substantive due process rights had occurred by this use of force. Therefore, qualified immunity need not be invoked.

D      Municipal Liability

Plaintiff argues that Erie County and the supervisory defendants are liable under Monell, even if the individual defendants had not violated his rights, if other, unnamed officers violated his rights due to an unconstitutional policy or custom (Docket No. 42, Pl. Memo. at 16). Plaintiff alleges that defendant Erie County had a policy or custom of failing to train deputies in the use of force (Docket No. 1, Compl. ¶ 35) as well as a policy or custom to overlook random or unprovoked acts of violence by deputies (id. ¶ 36). Defendants argue that if plaintiff fails to establish that excessive force was used against him by the named defendants, then his failure to train and supervise claims should be denied (Docket No. 34, Defs. Memo. at 10-11).

In Matican v. City of New York, 524 F.3d 151, 154 (2d Cir. 2008), plaintiff alleged that police officers violated his rights and that they acted pursuant to a city policy or custom in violating his rights. The Second Circuit concluded that those claims depended upon the "single threshold question: did the officers' action violate Matican's constitutional rights? If they did

not, then the City cannot be held liable to Matican under § 1983, regardless of whether the officers acted pursuant to a municipal policy or custom," id. (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam)). The court held that the officers did not violate plaintiff's rights, id. at 155-59, hence did not address whether the officers acted pursuant to a municipal policy or custom. Plaintiff here tries to bypass whether the named defendants violated his rights by arguing that other deputies followed county policy or custom in violating his rights. But the Complaint only alleges violation of his rights by the named defendants in acting pursuant to county policy or custom. Plaintiff cannot extend liability to the County for the action or inaction of unnamed deputies where plaintiff does not allege that any of them had a duty to intervene, even if those deputies acted or failed to act pursuant to county policy. Alleging in the Complaint (Docket No. 1, Compl. ¶¶ 38-40) other instances to show the existence of a policy or custom of failing to train or adequately supervise does not assist plaintiff where he, as concluded above, fails to state a claim that his rights were violated.

Therefore, plaintiff fails to state a claim as to supervisory or municipal liability and defendants' motion for summary judgment as to those grounds should also be **granted**.

E.      Rule 56(d) Discovery

Finally, plaintiff argues that summary judgment is not appropriate since he has yet to obtain the names of witnesses to the incident (Docket No. 42, Pl. Memo. at 17-18). Under Rule 56(d), "if a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may" defer consideration of the motion or deny it; allow time for discovery; or issue any other appropriate Order. The essential fact for granting defendants' motion here is the extent of plaintiff's physical injuries. Identifying

eyewitnesses to the incident is not essential to this inquiry to have this motion deferred or denied while plaintiff engages in discovery. Plaintiff's medical records from the incident (which is disputed in their comprehensiveness) are among the moving papers. Plaintiff's opposition to this summary judgment motion for leave to conduct further discovery as to the incident should be **denied**.

## CONCLUSION

Based upon the above, it is recommended that defendants' motion for summary judgment (Docket No. 34) be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
April 5, 2013